IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MSW CAPITAL, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:16-CV-3076-L** |
| | § | |
| **AARON'S, INC. and TURTLE CREEK ASSETS, LTD.,** | § | |
| | § | |
| Defendants. | § | |

# ORDER

Before the court is Defendant Aaron's, Inc.'s Motion to Dismiss Plaintiff's Complaint Against Defendant Aaron's, Inc. (Doc. 9), filed November 28, 2016. On April 20, 2017, United States Magistrate Judge David L. Horan entered the Findings, Conclusions, and Recommendation of the United States Magistrate Judge ("Report"). The Report recommends that Defendant Aaron's, Inc. ("Aaron's") motion to dismiss be granted, and that Plaintiff's claim against Aaron's for tortious interference with an existing business relationship and exemplary damages be dismissed with prejudice. The Report found that Plaintiff MSW Capital, LLC ("MSW" or "Plaintiff") failed to plead an essential element of its claim for tortious interference with an existing business relationship against Aaron's, as it did not allege sufficient facts to demonstrate Aaron's willful and intentional interference with the MSW/Turtle Creek contractual relationship. As such, the Report recommends MSW's claim for tortious interference based on Aaron's failure to produce documents, along with its request for exemplary damages for that claim, be dismissed with prejudice. Although MSW characterizes its claim as one for tortious interference with a business relationship (Pl.'s Orig. Compl. 9-10, ¶¶ 62-67), the correct designation of its claim is tortious interference with a contract. This is so because MSW alleges that Aaron's interfered with an

**Order – Page 1**

existing contract between it and Turtle Creek Assets, Ltd. ("Turtle Creek"). *Id*. ¶ 64. The court, therefore, will construe MSW's claim against Aaron's as one for tortious interference with a contract. Plaintiff filed three objections to the Report.

First, Plaintiff objects to the Report's finding that it did not allege sufficient facts to support the willful and intentional element of its tortious interference with an existing business relationship claim against Aaron's. Plaintiff contends that "Texas law does not require a plaintiff to *explicitly* allege that a defendant 'induced or intended to induce' a breach in order to satisfactorily plead the intent element of a tortious interference with a business relationship claim." (emphasis in original). Pl.'s Obj. 4. Plaintiff contends that the Report "has imposed an additional pleading requirement – *i.e.*, that MSW must explicitly allege that Aaron's '*induced*' a breach of contact." (emphasis added). Pl.'s Obj. 4. Instead, Plaintiff contends that "to properly plead a 'willful and intentional act of interference,' a plaintiff need only allege facts to demonstrate that the defendant 'desire[d] to cause the consequences of his act, or . . . believe[d] that the consequences are substantially certain to result from it.'" Pl.'s Obj. 5 (quoting *Wolf v. Cowgirl Tuff Co.*, No. 1:15-CV-1195 RP, 2016 WL 4597638 at *3 (W.D. Tex. September 2, 2016) (Pitman J.) (alterations in original) The holding in *Wolf* correctly reflects Texas law. *See Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 490 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)). Plaintiff contends that it has pleaded sufficient factual allegations to show that "Aaron's refusal to produce the necessary documents caused or 'induced' Turtle Creek to breach the Turtle Creek/MW Agreement." Pl.'s Obj. 9.

The court agrees that the Report does not state the correct standard to prove the "intent" element; however, the court concludes that the result reached by the magistrate judge is correct. The Report incorrectly states that "inducement" is part of the "intent" element. This error is of no

moment, as Texas courts require proof of inducement to establish another element of a tortious interference claim—proximate cause. *See Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 731 (5th Cir. 2015) (citing *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied)) (emphasis in original).

Regardless of whether Plaintiff has set forth allegations from which the court can reasonably infer that it has sufficiently alleged proximate cause, Plaintiff's claim ultimately fails for the several alternative reasons as stated in the Report, namely that:

> Aaron's is correct that "Plaintiff's allegation that Aaron's purportedly was aware that Plaintiff's collection efforts would be affected still fails to establish willful and intentional interference by Aaron's." *Id.* at 8-9. Neither can MSW – particularly in the face of the language in the Aaron's/Turtle Creek Agreement disclaiming any third-party reliance or beneficiary – allege a tortious-interference claim based on allegations that Aaron's breached its contractual obligations to Turtle Creek under the Aaron's/Turtle Creek Agreement without any allegations that this did or could induce a breach of the Turtle Creek/MSW Agreement. *See Cuba*, 814 at 717.
> 
> And, as Aaron's asserts, even if MSW "is considered an 'assign' of the Aaron's/Turtle Creek Agreement, [MSW] still fails to state a claim for tortious interference [with the Aaron's/Turtle Creek Agreement] because Aaron's, as the purported tortfeasor, was not a 'stranger' to [that] contract." Dkt. 17 at 4 n.6; *accord Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 124 (5th Cir. 2017) (noting that a defendant "cannot tortiously interfere with its own contracts"); *Morgan Stanley & Co. v. Texas Oil Co., 958 S.W.2d 178, 179 (Tex. 1997) (noting that "a person must be a stranger to a contract to tortiously interfere with it").*
> 
> Alternatively, MSW focuses on the contract language, arguing that Turtle Creek breached the Turtle Creek/MSW Agreement by failing to provide requested documents that are "included among the Contracts." When a dispute arises from the terms of a contract and the contract is not ambiguous, the Court can determine the parties' rights and obligations under the agreement as a matter of law. *See ACS Inv'rs, Inc. v. McLaughlin*, 942 S.W.2d 426, 430 (Tex. 1997). Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference. *See id.* (citing *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1258 (5th Cir. 1985)). Moreover, a contracting party's preemptive rights are not triggered by the other contracting party's negotiations with a third-party purchaser. *See id.*
> 
> Even if the "included among the Contracts" language required Aaron's to produce the requested documents, there is no provision in the Turtle Creek/MSW Agreement providing that Turtle Creek would be in breach by unsuccessfully asking Aaron's for additional documents. Therefore, even crediting MSW's

allegations and arguments, MSW cannot allege that Aaron's knowingly and intentionally induced Turtle Creek to breach – or intended to induce a breach of – the Turtle Creek/MSW Agreement, which MSW must do to state a claim for tortious interference with contract.

Report 13-14. Accordingly, the court **overrules** Plaintiff's first objection.

Second, MSW objects to the Report's finding that Turtle Creek's failure to produce the Lease Agreement or a substitute affidavit is not a breach of its agreement with MSW. Plaintiff contends that it can establish a tortious interference with a contract claim against Aaron's because Aaron's caused Turtle Creek's failure to produce account documents, which is a breach of the Turtle Creek/MSW Agreement. Further, MSW objects to the Report because it contends that the Report erroneously holds that Turtle Creek's failure to produce the lease agreement or a substitute affidavit is not a breach of its agreement with MSW. Plaintiff contends that the terms of the Agreement are ambiguous, and "the Court should not determine the parties' rights and obligations as a matter of law where there is an ambiguous contract." Pl.'s Obj. 13.

The MSW/Turtle Creek Agreement states, "'[F]ailure to provide any documentation that is not included among the Contracts will not constitute a Breach on the part of' Turtle Creek." Report at 12; Ex. G at 16, § 8.16. The Agreement defines "the Contracts" as "the rental contracts relating to the Accounts under which Seller has leased to customers items of furniture, electronics, appliances and other merchandise and such other available documents and/or electronic media in Seller's possession that support the accounts." Ex. G at 3, § 1.1. The Agreement further defines "Account Documents" as "the signed rental agreement and last billing statement[,]" where said documents are available. Ex. G at 20-21, Annex I § 8. Where the Account Documents are unavailable, the Agreement states that "an affidavit will be provided in a form reasonably acceptable to Buyer [MSW]." *Id.* The Agreement, however, only requires the Seller to retrieve

or transmit the "documentation related to the Accounts (e.g. Seller's lease agreement or affidavit if the lease agreement is missing) as are available to Seller[.]" Ex. G at 11, § 5.1.

The court conducted an independent review of the MSW/Turtle Creek Agreement. The court determines that the language in the agreement is not ambiguous, as it is not susceptible to more than one reasonable interpretation. The MSW/Turtle Creek Agreement expressly provides that failure to deliver documentation does not constitute a breach. Therefore, Plaintiff's second objection is **overruled**.

Third, Plaintiff objects to its claims being dismissed with prejudice under rule 12(b)(6). Even when liberally construed in its favor, Plaintiff is unable to state a claim for tortious interference with a contractual or business relationship. The court determines that Plaintiff's pleadings cannot be amended in such a way to cure the legal deficiencies herein identified, and, therefore, attempts to amend will be futile and unnecessarily delay resolution of the tortious interference with a contract claim. Moreover, MSW has not requested, except on one point,* to amend its pleadings, and has not informed the court how it would amend to cure the legal deficiencies identified herein by the court. Accordingly, dismissal with prejudice is warranted. Plaintiff's objection, therefore, is **overruled.**

Accordingly, after reviewing the motions, record in this case, applicable law, Report, and conducting a de novo review of the Defendants' objections, the court determines that the findings and conclusions of the magistrate judge are **correct** to the extent as stated in this order. The court

---

* MSW states, "To the extent the Court finds that the word "induce" should be explicitly pled in the Complaint to plead a tortious interference claim, MSW alternatively requests that the claims against Aaron's be dismissed without prejudice and requests leave to file an amended complaint." Pl.'s Obj. 14, n.7. The court agreed with MSW on this point, and addressed it earlier in this order. As the court explained, the use of the incorrect standard by the magistrate judge would not change the outcome. Thus, there is no need for MSW to amend its pleadings regarding this issue. As MSW has not requested to amend beyond this issue, its request to amend is **moot**.

**Order – Page 5**

therefore **accepts, as modified,** the findings and conclusions of the magistrate judge, **grants** Defendant Aaron's Motion to Dismiss; **overrules** Plaintiff's objections to the Report; and **dismisses with prejudice** MSW's claims against Aaron's. Plaintiff's claims for Breach of Contract, Recession, and Attorney's Fees against Defendant Turtle Creek Assets, Ltd. remain.

**It is so ordered** this 18th day of August, 2017.

Sam A. Lindsay
United States District Judge